IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 12-cv-01080-RBJ

D.R. HORTON, INC. – DENVER d/b/a TRIMARK COMMUNITIES, a Delaware corporation;
D.R. HORTON, INC., a Delaware corporation,

    Plaintiffs,

v.

MOUNTAIN STATES MUTUAL CASUALTY COMPANY, a New Mexico corporation;
ZURICH AMERICAN INSURANCE COMPANY, a New York corporation,
CONTINENTAL WESTERN INSURANCE COMPANY, an Iowa corporation,
HARTFORD CASUALTY INSURANCE COMPANY, an Indiana corporation; and
HARTFORD FIRE INSURANCE COMPANY, a Connecticut corporation,

    Defendants.

## ORDER

This order addresses a motion for reconsideration of a previous determination of law, filed by the Mountain States Mutual Casualty Company; five motions for summary or partial summary judgment filed by Mountain States; a motion for a determination of law, filed by Mountain States; a motion for a bench trial, also filed by Mountain states; and, finally, a motion for summary judgment filed by the plaintiffs. For the reasons set forth herein, all motions for summary or partial summary judgment are either moot or denied; the motion for a determination of law is granted in part and denied in part; and the motion for a bench trial is granted.

**Factual and Case Background**

Between 2002 and 2008 D.R. Horton, Inc. -- Denver, d/b/a Trimark Communities, a wholly-owned subsidiary of D.R. Horton, Inc., developed a residential community in Arapahoe County, Colorado known as Windermere. I will refer to these parties, the plaintiffs in this case,

simply as "Trimark." Trimark engaged several subcontractors to perform the actual construction work, including A&A Construction Services; Concrete Express, Inc.; Mike's Stucco, LLC; Horizon Drywall, Inc. and Tristar Drywall, Inc.

The subcontracts required the subcontractors to carry Comprehensive General Liability Insurance and to name Trimark as an additional insured. Mike's Stucco, which was engaged in July 2002 to provide stucco and stone masonry, purchased complying insurance from Continental Western Insurance Company. Concrete Express, which was engaged in November 2002 to provide concrete flatwork and other work, purchased its insurance from Zurich American Insurance Company. A&A Construction Services, engaged in April 2004 to provide exterior finish work, purchased its insurance from Mountain States. Horizon Drywall, engaged in March 2004 to install drywall, also purchased liability insurance from Mountain States. Tristar Drywall, engaged in May 2005 to install drywall, purchased insurance from both Mountain States and the Hartford Fire Insurance Company.

In June 2008 the Windemere homeowners' association served Trimark with a statutory notice of claim of construction defects. [CM/ECF docket entry # 4-10]. The notice asserted a wide variety of complaints including problems with roofs, windows, doors, tiles, drywall, kitchen cabinets, countertops, plumbing, electrical, insulation, cracking in floors and garage slabs, concrete, exterior cracking, drainage, decks, hardwood flooring, carpeting, heating, air conditioning, painting, sprinklers and landscaping. *Id.* at 4-10.

In September 2009 the homeowners' association sued Trimark in the Arapahoe County District Court based upon alleged construction defects. *See* Complaint in Intervention & Jury Demand [#4-11]. Once again the homeowners' association complained of a wide variety of defects, including drywall. *Id.* at ¶31 and subparagraphs 31(u), (w), (x), (xxx) and (cccc). *See*

*also* Trimark's Statement of Facts in support of its omnibus motion for summary judgment [#126] at ¶¶ 38-42. In addition to Trimark the homeowners' association named several subcontractors as additional defendants, including A&A Construction Services, Concrete Express and Mike's Stucco, but not Horizon Drywall or Tristar Drywall. *Id.* In October 2010 the homeowners' association agreed that its claims could be submitted to binding arbitration to be conducted by the Judicial Arbiter Group in Denver.

Meanwhile Trimark had tendered the defense against the homeowners' association's claims to the five subcontractors and their insurers.[1] Although Trimark asserted that the duty to defend was joint and several, such that each insurer had an independent duty to provide a complete defense, its counsel proposed a method by which the insurers could share defense costs. Trimark also hired a third party to handle the accounting and billing of the costs to the respective insurers according to the proposed shares.

Each of the insurers accepted the tender of the defense and appeared to agree to the cost sharing proposal as well. However, the plan got off to a shaky start, leading Trimark to file the present insurance coverage lawsuit in state court on March 8, 2012. Continental Western removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. Trimark alleged that none of the insurers had paid more than a small portion of its share, and that Trimark therefore had to pay more than $950,000 of the approximately $1.3 million of defense costs that had accrued as of the time this suit was filed. It sought (1) a declaratory judgment of the respective rights and obligations of the parties; (2) damages for breach of contract on the basis that each insurer had a joint and several contractual obligation to defend; and (3) double damages

---

[1] Other subcontractors apparently had failed to comply with their obligation to purchase liability insurance and to name Trimark as an additional insured.

and attorney's fees under Colorado Revised Statutes §§ 10-3-1115 and 10-3-1116 (statutory bad faith).

In August 2012 Hartford filed a motion for a determination of law, asking the Court to decide whether Trimark as an insured under a liability policy is a "first party claimant" for purposes of §§ 10-3-1115 and 10-3-1116 [#48]. Trimark filed a motion for a determination of law, asking the Court to confirm that the several insurers are jointly and severally liable for the cost of their defense against the underlying claim and suit/arbitration. Those motions were fully briefed and orally argued but, at the parties' request, the Court deferred ruling pending their efforts to settle their disputes. A settlement was not achieved, and on February 25, 2013 this Court issued its order resolving both issues in Trimark's favor, i.e., that the duty to defend is joint and several, and that Trimark is a "first-party claimant" as that term is defined in C.R.S. § 10-3-1115. [#87].

Mountain States then moved for reconsideration of both rulings or, alternatively, to certify them for interlocutory appeal to the Tenth Circuit. [#89]. Mountain States also filed separate motions for summary judgment as to its insurance policies sold to Horizon Drywall [#105], Tri-Star Drywall [#106], and A&A Construction Services [#108]. In addition Mountain States filed motions for partial summary judgment asking the Court to dismiss Trimark's bad faith claim [#112] and to hold that Mountain States has no obligation to reimburse Trimark for pre-tender defense costs [#113]. Mountain States also filed a motion for a determination of a question of law [#115] concerning the scope of its potential exposure for damages under C.R.S. § 10-3-1116, a motion to remove this case from the jury docket and convert it to trial to the Court [#154]. Not to be left out, Trimark filed its own "Omnibus Motion for Summary Judgment and for Determinations of Law" [#116]. The motions have been extensively briefed.

4

Before the Court dove into the pile, however, the parties appeared for a trial preparation conference on July 18, 2013. The Court was informed that Hartford, Continental and Zurich had paid all but about $64,000 of the defense costs allocated to them under the original cost sharing agreement, and that the Trimark and those insurers might be able through further negotiations to resolve the remaining issues among them. Mountain States had not fully paid its allocated share, but Trimark was hopeful of engaging in further negotiations or mediation with Mountain States as well. The Court agreed to defer consideration of the pending motions while the parties continued their efforts to conclude the case by settlement, and it vacated the August 19, 2013 trial date. The Court requested a status report by August 1, 2013.

The Court did receive a status report on August 1, 2013 and several others thereafter. The most recent relevant filing was Trimark's "Notice of Pending Settlement" filed on October 29, 2013 [#177]. This document reports that Trimark had reached an agreement in principle with The Cooler Company, a subcontractor not a party to this case, and that upon the consummation of that settlement, Trimark will have been made whole or nearly whole for its costs of defending the underlying suit. [2] Accordingly, Trimark reported that it would dismiss its breach of contract claims against all defendants. The Court has not yet received a motion to dismiss the contract claims, but I am assuming that this will follow in due course.

In the same filing Trimark explained that the anticipated dismissal of the contract claims will render its pending summary judgment motion moot as it pertains to Hartford, Continental

---

[2] According to Trimark's evidence, Mountain States paid no part of Trimark's defense costs under either the Horizon Drywall or the Tristar Drywall policies before the commencement of the present case. While this case has been pending Mountain States has paid Trimark $26,778.90 under the Horizon policy and $15,394.09 under the Tristar policy. Trimark states that Mountain States paid $35,000 under the A&A policy before this suit and an additional $153,411.91 under that policy after the suit was filed. *See* Omnibus Response [#129] at 14-15 (CM/ECF pagination; *see infra* n. 4). Trimark contends that those payments, in addition to being untimely, fell short of paying the share of Trimark's defense costs assigned to Mountain States under the cost sharing agreement and left Trimark short of a full defense until the other insurers paid their shares and The Cooler Company agreed in principal to pay the balance.

and Zurich. However, it will not moot the duty to defend issue as to Mountain States, because Mountain States' contractual obligation to Trimark is the key to Trimark's claim against Mountain States under C.R.S. §§ 10-3-1115 and 10-3-1116. *Id.* at 2. Finally, Trimark states that the dismissal of all of its claims against Continental will eliminate the only party who opposed a bench trial. *Id.*

Even after wading through all of these pleadings I am not sure I have a complete understanding of the present status of the case. I am not sure whether Trimark and Mountain States are still trying to resolve their disputes informally, although I do understand that they participated in mediation with former federal judge Nottingham without success. Nevertheless, I am satisfied that the Court has given the parties ample time to try to settle the case, and that it is time to address the motions and reset a trial date. This order addresses those issues.

**Analysis and Conclusions**

**Mountain States' Motion for Reconsideration [#89]**

Mountain States asks the Court to reconsider its order that the duty to defend is joint and several. In support, Mountain States suggests that the order potentially exposes an insurer whose insured subcontractor causes a minimal amount of construction damage to pay for a defense that is wildly disproportionate to the amount of the damage. For example, a subcontractor whose work is ultimately only connected to $68.37 in damages could be liable for a $1.66 million defense. This disparity, it suggests, could cause the market for liability insurance to dry up.

The duty to defend is triggered by the claims asserted in the underlying case. A joint and several duty to defend does not stick one insurer with the whole tab. As I explained in my previous order, where more than one insurer has a duty to defend, but an insurer believes it has paid a disproportionate share of the defense costs, the respective shares ultimately to be borne by

6

each triggered policy can be determined in litigation among the insurers if they cannot resolve the apportionment by agreement. *See, e.g., Insurance Co. of North America v. Forty-Eight Insulations,* 633 F.2d 1212, 1225 (6th Cir. 1980). *Cf. Public Service Co. v. Wallis,* 986 P.2d 924, 939-41 (Colo. 1999) (not addressing allocation of defense costs). However, the insured is not required to remain undefended while the insurers fight it out as to their respective shares. Nor, of course, need the insured wait until the underlying liability is determined before it is provided a defense.

I also note that the example offered by Mountain States is devoid of any relation to the reality of what occurred in this case. The lion's share of the defense in this case was provided by other insurers. However, if Mountain States nevertheless believes that it has paid more than its fair share, it can pursue that with the other insurers. The Court declines to reverse what it considers to have been an unremarkable ruling – that the duty to defend among insurers whose policies were triggered is joint and several.

As for the part of the Court's February 25, 2013 order that held that Trimark is a "first-party claimant" for purposes of C.R.S. § 10-3-1115 and 10-3-1116, the Court recognized that the federal judges in this district who have considered the issue are divided. The one state district judge of whom the parties were aware who addressed the issue in a written order resolved the issue in the same manner that this Court ultimately did. *Stresscon Corp. v. Rocky Mountain Structures, Inc.,* No. 09CV3252, slip op. at 1-5 (April 22, 2010), filed in this case at docket entry #59-1.

The *Stresscon* case was pending on appeal to the Colorado Court of Appeals at the time I issued my order. An order has subsequently been issued in that appeal, but the court did not resolve the "first-party claimant" issue. *See Stresscon Corp. v. Travelers Property Casualty*

7

*Company of America,* Nos. 11CA1239 and 11CA1582, 2013 WL 4874352 (Colo. App. Sept. 12, 2013). Therefore, I have no reason to reconsider my previous order. I considered the issue and concluded, for the reasons set forth there, that I agreed with the point of view adopted by Judge Hoffman in the *Stresscon* case and by Judges Krieger and Martinez in this district.

Nor do I conclude that there is cause to certify the issue for interlocutory appeal. It is a matter of state law that ultimately must be resolved by Colorado's appellate courts. The Tenth Circuit, like this Court, would be attempting to predict what the Colorado appellate courts will ultimately decide. The Tenth Circuit can, of course, reach a different prediction than mine. However, I think it best to allow that process to take place in normal course. Perhaps by the time the issue is presented to the Circuit there will be more state law for that court to consider.

### **Mountain States' Motion for Summary Judgment (Horizon Drywall policy) [# 105]**

This motion seeks summary judgment declaring that Mountain States has no duty to defend under the policy it issued to Horizon Drywall. It makes essentially two arguments. First, the duty to defend arises from the complaint in the underlying action, but the homeowners' association's lawsuit did not name Horizon Drywall as a defendant. Second, an insurer may rely on facts outside the four corners of the underlying claim or complaint in seeking reimbursement of defense costs paid on behalf of its insured. *See Cotter Corp. v. American Empire Surplus Lines Ins. Co.,* 90 P.3d 814, 827 (Colo. 2004). Mountain States relies in that regard on experts who investigated the alleged defects but did not find that Horizon Drywall's work was defective.

The first argument is based upon a false premise. It is immaterial that the homeowners' association's complaint did not name Horizon. The homeowners' association's claim alleged that Trimark was liable for damages due to defective construction in a multitude of areas

including drywall. Trimark was an insured under the Horizon policy. That was enough to trigger the duty to defend Trimark under that policy.

The second argument misapplies *Cotter* to the facts of this case. It has long been settled in Colorado law, as *Cotter* again confirmed, that once the duty to defend has been triggered by the allegations in the underlying complaint, the insurer must provide a defense. 90 P.2d at 927. If the insurer believes that it has no obligation to defend, it must nevertheless provide a defense. If it does so, then at the conclusion of the underlying litigation it may seek reimbursement of the defense costs based on facts outside the complaint that establish that there was no coverage. As the Court put it, in *Hecla*[3] "we merely attempted to create a remedy for insurers that provided defenses to insureds when coverage ultimately did not exist." *Id.* at 828. The Court in *Cotter* reiterated, "[w]e do not intend to create an incentive for insurers to refuse to defend in the hope that litigation will reveal that no duty to defend exists." *Id.* Apropos to the present case, the Court added, "[w]e determine the duty to defend on the same basis both before and after the completion of the underlying litigation to ensure that insurers that refuse to defend do not gain an advantage over insurers that establish their obligations before the litigation has completed." *Id.*

At a minimum there is a factual dispute as to whether Mountain States honored its duty to defend Trimark. That alone is sufficient reason to deny its request for summary disposition. If Mountain States did not fully provide the quid pro quo, then it has no right to seek reimbursement of the amounts it did contribute to the defense costs.

**Mountain States' Motion for Summary Judgment (Tristar Drywall policy) [# 106]**

Trimark argues, and I agree, that the analysis concerning Mountain States' duty to defend Trimark under the Tristar Drywall policy is the same as that applicable to the Horizon Drywall policy. However, Trimark has elected not to further pursue its claim against Mountain States in

---

[3] *Hecla Mining Co. v. N.H. Ins. Co.,* 811 P.2d 1083 (Colo. 1991).

relation to the Tristar Drywall policy. Omnibus Response [#129] at 28.[4] Accordingly, this motion is moot.

## Mountain States' Motion for Summary Judgment (A&A Construction Services policy) [# 108]

The facts concerning the Mountain States policy sold to A&A Construction Services are different from those concerning Horizon Drywall and Tristar Drywall in some respects. For one thing, A&A was named a defendant in the underlying lawsuit. However, as explained above, the duty to defend Trimark arises from the underlying claim and complaint and Trimark's status as an additional insured, whether the subcontract is named (A&A) or not (Horizon and Tristar). The Court finds that that the underlying claim and lawsuit alleged damage from a multitude of alleged construction defects that were broad enough to include the type of work A&A provided. *See, e.g.,* Trimark's list of alleged defects potentially relevant to stucco and stone masonry work in its Omnibus Response [#129] at 30-32

Mountain States cites exclusions in the policy that, it argues, negate its duty to defend. The potential applicability of the exclusions depends on matters outside the underlying claim and complaint, i.e., facts and exclusions that might negate a duty to indemnify the insured and even sustain a claim for reimbursement of defense costs if the insurer has provided a full and complete defense. However, those issues are not presented to this Court in this case. The Court is satisfied that Mountain States did have a duty to defend Trimark under the A&A policy, leaving as a disputed issue of material fact whether Mountain States did fully and completely fulfilled that duty. Therefore, for reasons similar to those discussed in relation to the Horizon Drywall policy, the motion for summary judgment is denied.

---

[4] When citing motions and briefs, I use the CM/ECF pagination rather than the parties' original page numbers.

### Mountain States' Motion for Partial Summary Judgment [# 112]

Mountain States here argues that because the policies provide no coverage (for the reasons it asserted in its three motions for summary judgment), there can be no liability under C.R.S. § 10-3-1115 or 10-3-1116. The Court has denied those three motions, finding in the process that there was a duty to defend Trimark under each of them. I have determined that Mountain States has at least raised a question of fact as to whether it fully and completely fulfilled that duty to defend. The statutes address a different but related question – did the insurer unreasonably delay or deny a covered benefit. That is inherently a question of fact, thus compelling a denial of this motion for partial summary judgment. In that respect I disagree with Trimark's "concession" in its response [#136] that this can be resolved as a matter of law. *Id.* at 8.

### Mountain States' Motion for Partial Summary Judgment Regarding Pre-Tender Defense Costs [#113]

In its response to this motion, Trimark notes that it is not seeking to recover pre-tender defense costs. The parties then quibble about whether Trimark said so clearly enough in a May 3, 2013 supplemental response to a Mountain States' interrogatory. This is one fray into which the Court need not enter. The matter is moot.

### Mountain States' Motion for Determination of A Question of Law Regarding Damages Allowed under C.R.S. §§ 10-3-1115 and 10-3-1116 [#115]

C.R.S. § 10-3-1116(1) provides that "a first-party claimant as defined in section 10-3-1115 whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the

covered benefit." This motion [#115] seeks both an interpretation of this language and an explanation of how it applies to the facts of this case.

The interpretation issue is whether the statute permits the insured to recover (1) two times the covered benefit in addition to the covered benefit itself, or (2) only a total of two times the covered benefit, inclusive of the covered benefit. Mountain States calls my attention to two state district court decisions that support the latter interpretation. *See Thompson v. American National Property and Casualty Company,* No. 11CV7221, slip op. at 2 (Denver District Court October 23, 2012)(CM/ECF #115-3); *Myers v. American Family Mutual Ins. Co.,* No. 10CV5039, slip op. at 3-4 (Denver District Court June 9, 2011). Mountain States also cites a decision from my colleague Judge Kane that, in a footnote, tends to suggest the same result, although the insured apparently did not argue otherwise in that instance. *See C&M Towing & Recovery, Inc. v Redland Insurance Co.,* No. 10CV123, 2010 WL 326335, at *1, n.1 (D. Colo. Jan. 21, 2010).

However, in *Rabin v. Fidelity National Property and Casualty Ins. Co.,* 863 F. Supp. 2d 1107 (D. Colo. 2012), Judge Babcock cites other state district court decisions that go the other way. Notably, after a careful analysis of the statutory language, Judge Babcock adopted the insured's position. *Id.* at 1111-12.

I agree with Judge Babcock. An insured is entitled to receive the benefit provided by the policy as a matter of the common law of contract. The statute provides the insured a separate and distinct cause of action. In subsection "(1)" it provides that if the benefit provided by the policy is unreasonably delayed or denied, then the insured may bring an action to recover reasonable attorney's fees (which are not generally available at common law), court costs (also not generally available at common law but addressed in other statutes), and two times the covered benefit. In subsection "(4)" the statute emphasizes that "[t]he action authorized in this

section is in addition to, and does not limit or affect, other actions available by statute or common law, now or in the future." As Judge Babcock noted, "nowhere does the section state that 'two times the covered benefit' shall include or account for those benefits already paid or sought in another claim." *Rabin,* 863 F. Supp. 2d at 1111.

Reasonable minds can differ, as the conflicting decisions among state district courts and among courts in this district illustrate. The ultimate interpretation of the statute will be a matter for Colorado's appellate courts. There is no appellate decision squarely on point to date, although the interpretation I adopt today seems to me to be suggested by language in *Hall v. American Standard Ins. Co. of Wisconsin,* 292 P.3d 1196, 1200 (Colo. App. 2012) ("In our view, the plain meaning of the statutory language in section 10-3-1116(1) is that the components of damages for this statutory claim are both 'reasonable attorney fees and costs' and 'two times the covered benefit'). In any event, my view is that the plain language of the statute creates a distinct penalty defined as "two times the covered benefit," presumably in an effort to discourage insurers from unreasonably delaying or denying a contractual benefit. Mountain States' position amounts to a penalty equal to the amount of, or in other words one times, the contractual benefit. The Colorado General Assembly could have adopted that lesser penalty but it did not.

Before turning to the related question of how the statute applies to the present case, I must acknowledge Trimark's argument that *Rabin* did not go far enough. The statutory penalty attaches to the "covered benefit." Trimark argues that because the duty to defend is joint and several, the "covered benefit" is a full and complete defense. Therefore, because Mountain States unreasonably delayed and denied the provision of that "covered benefit," the statutory penalty to be imposed on Mountain States should be two times the aggregate post-tender fees and costs incurred in connection with Trimark's defense against the underlying complaint,

regardless of what the other insurers paid. I disagree, at least as the statute is applied to the facts of this case.

Trimark proposed a cost-sharing arrangement under which its defense costs would be shared among the insurers. The insurers, or at least the other insurers, agreed. Trimark cannot reasonably expect Mountain States to have paid defense costs that Trimark allocated to and that were satisfied by others. Therefore, the "covered benefit" applicable to Mountain States in this case is the portion of the defense costs not allocated to and paid by the other insurers.

Trimark has indicated that, assuming the completion of its settlement with The Cooler Company, it no longer will press its contract claim for reimbursement of defense costs. Therefore, Mountain States will not be required to complete its defense obligation to Trimark, although it conceivably could find itself in litigation with The Cooler Company or the other insurers. However, if the Court finds that Mountain States unreasonably delayed or denied the payment of its share of the defense costs, then Trimark will be entitled to recover a statutory penalty of two times the portion of its share that was unreasonably delayed or denied.

The following hypothetical example might help to clarify my application of this interpretation to the present case. Suppose the total cost of defending Trimark was $1,000,000; Trimark allocated 80% of its defense costs to other insurers; and the other insurers paid their $800,000 share. Mountain States paid $150,000, but $100,000 of that was unreasonably delayed. The remaining $50,000 was unreasonably denied but was ultimately paid by The Cooler Company. On those hypothetical facts, the Court would impose on Mountain States a statutory penalty of $300,000 -- two times the sum of the portion of its obligation that was delayed ($100,000) or denied ($50,000). There are other ways the statute could be interpreted, such as to assess a penalty of $400,000 in the example on the theory that timely payment of a portion of the

covered benefit does not change the fact that the covered benefit was not timely provided. However, I conclude that my resolution is more consistent with the language of the statute and its apparent purpose.

In sum, Mountain States' remaining exposure in this case includes a statutory penalty of two times the covered benefit, as I have defined it, plus reasonable attorney's fees and costs. There is no "offset" for the payments that Mountain States previously made, as those go towards satisfaction of its contractual obligation (which is now moot). By the same token the penalty, if any, will not be multiplied by six just because six Mountain States policies were triggered. The parties have not briefed the possible application of pre-judgment interest, so I do not address that issue.

**Plaintiffs' Omnibus Motion for Summary Judgment and for Determinations of Law [#116]**

This motion seeks, among other things, a declaration that Continental, Hartford and Zurich had a duty to defend and an order that those insurers, in addition to Mountain States, have a joint and several obligation to pay the sum of $77,837.19 which was the part of Trimark's defense costs remaining unpaid as of the date the motion was filed. These parts of the motion are now moot.

This motion also seeks a declaration that Mountain States had a duty to defend Trimark under the liability policies issued to A&A Construction Services, and Horizon Drywall. The Court has so indicated in denying Mountain States' motions ## 105 and 108, so that portion of this motion is also moot. The motion asks for a declaration that Mountain States policy had an independent duty to provide a full and complete defense under each Mountain States policy that was triggered. I agree, and to any extent that conclusion is not implicit in the Court's rulings on

other motions, I now make it explicit. I have also explained, however, that the scope of that duty has been narrowed in this case by the other insurers' payment of portions of the defense costs allocated to them in Trimark's proposed sharing agreement.

What is left is Trimark's request that the Court enter summary judgment declaring that Mountain States unreasonably delayed or denied payment of defense costs; and that Trimark is therefore entitled to recover a statutory penalty under C.R.S. § 10-3-1116(1). Trimark has presented substantial evidence that, if accepted, would entitle it to a statutory penalty and to an award of reasonable attorney's fees and costs. However, I have previously found that Mountain States has raised enough of a factual dispute to convince me that the better course is not to decide those issues on paper but instead to make final fact findings after receiving and evaluating evidence presented at trial.

Accordingly, to the extent that this motion has not been rendered moot, it is denied.

**Mountain States' Motion for Trial by the Court Pursuant to F.R.C.P. 39(a): #154**

The only other party remaining in the case, Trimark, has indicated that it does not oppose this motion. *See* Notice of Pending Settlement [#177] at 2. Accordingly, this motion is granted.

**Order**

1. Motion #89 is DENIED.
2. Motion #105 is DENIED.
3. Motion #106 is MOOT.
4. Motion #108 is DENIED.
5. Motion #112 is DENIED.
6. Motion #113 is MOOT.

7. Motion #115 is GRANTED IN PART AND DENIED IN PART. It is granted to the extent that the Court has interpreted the statute. However, the Court denies the request that the statute be given the interpretation sought by Mountain States.

8. Motion #116 is DENIED.

9. Motion #154 is GRANTED.

10. The remaining parties should promptly contact Chambers to set a new trial date.

DATED this 25th day of November, 2013.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge